OPINION OF THE COURT
Arthur D. Spatt, J.
This petition for a judgment, pursuant to CPLR article 78, ordering the respondents to correct the 1981-1982 tax assessment roll and to cancel the 1981-1982 tax liens on petitioner’s real property; and the cross motion by respondents for a judgment dismissing this proceeding, are determined as set forth below.
BACKGROUND AND CONTENTIONS
The petitioner, City of New York (City), is the record owner of certain real property in the Village of Valley Stream (Village). On February 5, 1981, the City, by a supervising appraiser, inspected the tentative assessment roll at the Valley Stream Village Hall and found its property marked “exempt” on said roll. Petitioner contends that at some time subsequent to February 5, 1981, the status of the City’s property was changed by the respondents from exempt to taxable, without any notice to the City.
*740 On February 16, 1982, the City received tax bills based on a total assessment of $108,000 for said property, in the amount of $9,633.60 plus $674.42 for penalties due to late payment and $9 for duplicate bills.
The City contends that the respondents’ action in changing the tax status of the City’s property after the tentative assessment roll had been made available to the public, without prior notice to the City, “was in excess of respondents’jurisdiction, in violation of lawful procedure, illegal, invalid, an error in law, arbitrary and capricious as a matter of law and a denial of due process of law”.
Finally, the City contends that the assessments “are illegal, unequal and overvalued” as stated in prior protests filed against said property; and, by changing the assessment roll without notice, the City wás deprived of the opportunity to file as timely protests for the tax year 1981-1982 prior to the February 17, 1981 deadline.
The City made payment of the taxes in question under protest and now seeks a correction of the 1981-1982 assessment roll, a cancellation of the tax lien for late penalties and other relief.
In support of its position, the City annexed the affidavit of Bernard Leeman dated March 17, 1982, in which he related the following facts:
“5. I returned to the Village Hall on February 5, 1981, and did in fact inspect the tentative assessment roll which was open to the public that day. I found the properties designated as Village Line Nos. 8750-18, 8750-24 and 8759-25 listed on the tentative assessment roll with the word ‘exempt’ specifically indicated by numbers, appearing next to each property.”
“7.1 received no subsequent information or communication from any one of the respondents regarding any change in the tax status of the property until February 4, 1982, when I returned to the Valley Stream Tax Assessment Office to inspect the 1982-83 tentative assessment roll. On that date, the same Emma Oellerich with whom I spoke on February 2, 1981, informed me that the City had not paid its 1981-82 taxes on Village Line Nos. 8750-18, 8750-24 and 8750-25. She showed me the 1981-82 tentative assess *741 ment roll on which the word ‘exempt’ had now been struck out, and an assessment placed on the roll for each of the above three properties without qualification.”
By affidavit of Michael Nixon, Chief of Real Estate Tax Disbursement and Analysis, dated March 17, 1982, the City contends that it received no tax bills from the Village for the tax year 1981-1982 prior to February 16, 1982.
By way of cross motion to dismiss, the respondents contend that the City has failed to commence this article 78 proceeding within four months of the alleged unlawful action by respondents and, therefore, this proceeding is barred by the Statute of Limitations.
Respondents concede that there was an “administrative error obvious on its face” which should have been known to the City “by reason of its knowledge, experience and expertise in this field”. The respondents contend that the City has paid taxes on the subject parcel for many years and at no time was an application made for exempt status. According to respondents, Mr. Leeman should have made an effort to bring this “obvious error” to the attention of the Village and should have rechecked the final assessment roll. Therefore, say respondents, the City has “unclean hands” in this matter.
Further, the respondents state that tax bills were, in fact, sent to the City and, in any event, there is no requirement to provide such service.
In addition, the respondents contend that the City had 30 days to file a protest after the final assessment and “merely failed to check the assessment at that time”.
Finally, respondents contend that the petition is deficient by reason of the failure to separately state and number its allegations, and that it cannot be answered in its present form.*
DETERMINATIONS
A “clerical error” means an incorrect entry of assessed valuation which, because of a mistake in transcription, does not conform to the entry for the same parcel which *742 appears in the records of the assessor. (Real Property Tax Law, § 550.)
Respondents concede that an “administrative error” was made by their representative when the tentative assessment roll was marked “exempt” and specific exemption numbers were set forth therein. This was a “clerical error” which was apparently changed by the respondents’ representative from “exempt” to “taxable”. Further, it is unrefuted that no notice of the error and/or the change was sent to the petitioner. The only notice asserted by respondents is that the statement by the Village Attorney in his affidavit dated April 8, 1982, stated that, “The Village records indicate that tax bills for all Village parcels, including the subject parcel, were delivered to the City at the same address at the same time.” No date was given as to when the tax bills were allegedly mailed, and no copies of the tax bills are annexed to the respondents’ papers. The City denies receiving such tax bills.
There is a statutory procedure for the correction of clerical errors on tentative assessment rolls. Section 552 of the Real Property Tax Law provides, in part, as follows:
“1. Clerical errors and unlawful entries on tentative assessment rolls "may be corrected in accordance with the provisions of this section.
“2. (a) Where it is made to appear to the assessor that a clerical error or an unlawful entry is present on the tentative assessment roll the assessor shall execute and transmit to the board of assessment review a verified statement that such clerical error or unlawful entry has been made. Such verified statement shall be on a form and shall contain such information as prescribed by the state board.”
“(c) Where the assessor, acting pursuant to the provisions of this section, submits to the board of assessment review a verified statement to increase an assessment, the assessor must provide the owner of the real property subject to such assessment a written notice together with a duplicate copy of the verified statement. Such written notice shall be mailed to the owner of the real property by certified mail at least five days prior to the meeting of the board of assessment review.”
*743 Section 553 of the Real Property Tax Law provides, in pertinent part, as follows:
“1. An assessor shall transmit a petition to the chairman of the board of assessment review, as prescribed by subdivision two of this section, for correction of any of the following errors:
“(a) a clerical error on the assessment roll for the current or preceding year which has resulted in an assessed valuation which is less than that actually appearing upon the property record card, field book or other final work product of the assessor;”
“(c) an omission from the assessment roll for the preceding year of the assessed valuation of taxable real property;
“(d) an omission from the assessment roll for the current year of the assessed valuation of taxable real property;
“(e) an unlawful entry appearing on the current assessment roll;”
“(b) The assessor shall, at least ten days prior to the date designated for the review of assessments made pursuant to paragraphs (a), (c), (d), (f) and (g) of subdivision one of this section, notify by certified mail, return receipt requested, any owner of real property assessed pursuant to this section. Such notice shall include a copy of the petition of the assessor and a statement of the time and place of the meeting of the appropriate board of assessment review.”
As to respondents’ contention that the Statute of Limitations is a bar to this proceeding, CPLR 217 provides, in part, as follows: “Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact”.
The four-month Statute of Limitations begins to run after the determination to be reviewed becomes “final and binding” upon the petitioner, namely, when the decision or action has an actual impact on the petitioner (Matter of Gargiul v Board of Educ., 54 AD2d 1085; Verbanic v Nyquist, 41 AD2d 466; 8 Weinstein-Korn-Miller, NY Civ *744 Prac, par 7804.02), or, in the alternative, when petitioner learned of the action at issue. (Matter of Martin v Ronan, 44 NY2d 374; Matter of Chavich v Board of Examiners of Bd. of Educ. of City of N. Y., 43 Misc 2d 1090.)
Petitioner’s representative observed and petitioner relied upon the erroneous “exempt” classification in the assessment roll. Respondents’ attempted correction of this error was not done in compliance with the requirements set forth in sections 552 and 553 of the Real Property Tax Law in that no notice of the correction either by certified mail or otherwise was given to petitioner. Petitioner made a request to the respondents, by way of its letter dated March 2, 1982, to correct the error and cancel the assessments, taxes and penalties for the year 1981-1982. This request was answered by a letter from the Village Attorney dated March 19, 1982, in which he conceded that the exempt classification “clearly, was an error” but rejected the petitioner’s request for redress.
The clerical error in this case, the attempted correction thereof and the failure to give notice to the City precipitated a “mandamus” situation. (See Matter of Town of Oxford v Chenango County Bd. of Supervisors, 23 AD2d 951.) In such a case, the Statute of Limitations begins to run where there is a demand for performance and a formal refusal. (See Matter of Hirsch v Formato, 69 AD2d 818.) Stated simply, the time limit for the institution of a proceeding in the nature of mandamus does not expire until four months after demand and refusal to perform a duty. (Austin v Board of Higher Educ. of City of N. Y., 5 NY2d 430; Matter of Lefrak v Procaccino, 52 AD2d 1016; Matter of Ferro v Lavine, 46 AD2d 313; Matter of Kleinman v Kaplan, 20 AD2d 594.) Here, the demand was by way of the City’s letter to the Village to correct the alleged illegal action, and the Village’s March 19, 1982 letter constituted a refusal.
However, it is firmly settled that a petitioner cannot indefinitely postpone the time to seek relief by delaying the demand. Petitioner must proceed promptly with the demand or be charged with laches. In this case, the petitioner did proceed promptly and with diligence after the *745 discovery of the error and the refusal of the Village to afford it relief.
Moreover, the petitioner first became aware of this error on February 16, 1982 when it received tax bills containing penalties, and this proceeding was brought well within four months of the time it first had such notice. (See, e.g., Matter of Davis v Westchester County Personnel Off., 75 AD2d 600.)
Nor did the correction of the error actually have “impact” on the petitioner or become “final and binding” until petitioner received notice thereof, pursuant to the applicable statutes. (See Shields v School of Law of Hofstra Univ., 77 AD2d 867; Matter of Mulvey v Board of Educ., 72 AD2d 584; Matter of Swierupski v Korn, 69 AD2d 632.)
Therefore, this article 78 proceeding was timely commenced.
On the merits, in this case involving the correction of a conceded “clerical error”, the statutes require written notice to be mailed by certified mail to the owner of the real property. It is conceded that no such notice was given to the City.
The respondents have deprived the City of a fundamental right of notice and due process. The notice requirements set forth in the applicable statutes which satisfy such due process requirements were not adhered to. (See, e.g., TRC Ind. Park v Town of Islip, 104 Misc 2d 585.)
Contrary to respondents’ arguments, the fact that this was an “administrative error obvious on its face” and that the City has paid taxes on the property for many years does not excuse this violation of lawful procedure. Further, in view of the express statutory duty imposed on the respondents to give notice, the City is not to be charged with the duty to either bring this “obvious error” to the attention of the Village or recheck the final assessment roll. There is no “unclean hands” on the part of the City in this matter.
While the City has been deprived of its right to notice and due process by respondents’ failure to give notice, the City cannot receive a windfall by not paying taxes which are lawfully due on the property. Therefore, the court shall *746 restore the City to the position it would have been in if no error had been made.
Accordingly, judgment is granted in favor of the City to provide as follows:
1. The action of the respondents in changing the status of the subject property on the 1981-1982 assessment roll after said roll had been made available to the public for inspection, without notice to the City of such change, was in violation of lawful and statutory procedure and was a denial of due process of law.
2. Respondents are directed to (a) cancel the lien for late penalties on the City’s subject properties; (b) accept the City’s protests of the 1981-1982 assessments on its real property mailed to respondents on March 3, 1982, as timely; (c) take action on said protests within 30 days after service upon the Village Attorney of the judgment to be entered herein; and (d) if the action taken by respondents is a denial of the relief sought in the protest, then the City is to be granted, without need to make further application to the court, leave to amend its article 7 petition, filed April 29, 1981, Index No. 7363/81 (covering similar property in the Village of Valley Stream) so as to include the property which is the subject of the petition.
3. The respondents are directed to refund the penalties for late payment in the sum of $674.42 and the $9 for duplicate bills within 20 days after service of a copy of the judgment to be entered herein on the Village Attorney.

 A number copy of the petition was served on the Village Attorney on April 13, 1982, and a copy was annexed to affidavit of Claire Barone, Esq., dated April 19, 1982.